# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Speegle Construction, Inc. | )    ASBCA No. 60089 |
| | ) |
| Under Contract No. W91278-07-D-0038 | ) |

APPEARANCE FOR THE APPELLANT:    Jesse W. Rigby, Esq.
    Clark, Partington, Hart, Larry,
      Bond & Stackhouse
    Pensacola, FL

APPEARANCES FOR THE GOVERNMENT:    Thomas H. Gourlay, Jr., Esq.
    Engineer Chief Trial Attorney
    David C. Brasfield, Jr., Esq.
    Andrea M. Dowdy, Esq.
    Engineer Trial Attorneys
    U.S. Army Engineer District, Mobile

## OPINION BY ADMINISTRATIVE JUDGE THRASHER
## ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

The United States Army Corps of Engineers (Corps or government) moves for summary judgment, arguing that Speegle Construction Inc. (Speegle or appellant) executed a bilateral modification that constituted both a release and an accord and satisfaction barring appellant's claim as a matter of law.[1] Appellant opposes the motion.[2] We deny the motion for the reasons set forth below.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. In 2006, Speegle was awarded an indefinite-delivery/indefinite-quantity (ID/IQ) contract (Contract No. W91278-07-D-0038) (Contract), for military construction support to the Corps' South Atlantic Division (R4, tab 4 at 1, 11). On 1 July 2010, Speegle was awarded Task Order (TO) No. 0004 for Design-Build Repair Hurricane Damage Phase I, Mississippi Army Ammunition Plant (MSAAP), Stennis Space Center,

---

[1] The government's motion included an attached exhibit (ex. G-1), a Price
    Negotiation Memorandum (PNM), dated 26 November 2012.

[2] Appellant's response to the government's motion for summary judgment included
    an attached affidavit of Jeffrey S. Page, President of Speegle Construction,
    Inc., dated 24 November 2015 (ex. A-1).

Mississippi (R4, tab 5 at 2). The stated purpose of the TO was to repair damage to the existing facilities resulting from Hurricane Katrina in September 2006 and to harden MSAAP infrastructure against future hurricanes. Phase I of the work included installation of underground communication system duct banks and the construction of a new alternate communications Point of Presence (POP) facility. (R4, tab 5 at 100)

2. On 16 November 2012, the parties executed bilateral Modification No. 000404/SC003 (Mod. 000404/SC003) modifying TO 0004 to incorporate changes to the scope of the work on the POP facility (R4, tab 6 at 13). Shortly thereafter it was discovered changes were required to the fire suppression system added by Mod. 000404/SC003 due to inadequate design data and update to new equipment parameters (ex. G-1). On 26 November 2012, the parties entered into negotiations to implement the changes to the POP facility fire suppression system. The parties reached agreement on all terms except the 122% field overhead rate Speegle proposed on behalf of one of its subcontractors, L. Pugh & Associates, Inc. (L. Pugh). (*Id.*) The parties were unable to reach agreement on this issue and, on 7 December 2012, the Corps issued unilateral Modification No. 00041H (Mod. 00041H) applying a 10% field overhead rate for L. Pugh. The modification did not provide a time extension and specifically reserved each party's rights to pursue claims under the Disputes clause. (R4, tab 6 at 15-16)

3. By Serial Letter H-0064, dated 19 August 2013, Speegle requested that the Corps obtain a DCAA audit of L. Pugh's overhead rate (R4, tab 7). That same day, Speegle sent Serial Letter H-0066 requesting a 21-day time extension, stating:

> On December 7, 2012 the Government issued unilateral modification SC011/00041H (attached) for Fire Suppression Changes for the subject contract. This unilateral was issued in the amount of $292,320.37 for added scope to the life safety systems for the subject contract. Please note this modification was not mutually agreed/accepted by SCI. The amount of the modification remains in dispute with regard to the subcontractor's overhead rate. SCI has submitted via a separate transmittal (reference serial letter H-0064) a request on behalf of L. Pugh and Associates for a DCAA audit. In addition, SCI was not granted additional contract performance time for this specific modification. Reference paragraph (D) of the subject modification wherein it states: *The contract completion date shall remain unchanged by this modification.* SCI does acknowledge additional contract time was added to modification 000404/SC003 - Misc. Scope changes to

2

POP Facility; however that modification was dated/executed on November 11, 2012, (21) days prior to issuing the unilateral modification for the Fire Suppression System.

The subject modification (SC011/00041H) significantly increased the scope of the Fire Suppression System.... This additional work added hundreds of man-hours as a result of this additional scope. SCI respectfully requests that a *minimum* of 21 calendar days be added to the contract performance. Though it could be argued that additional days can be substantiated, SCI is only seeking (at this time), uncompensated days that represent the 21 day difference in issue/execution dates for modification SC001/00041H and modification 000404/SC003. This delay and inaction on the part of the Government delayed our ability to process a change order to the subcontractor, which subsequently delayed shop drawings, fabrication of materials and installation of the subject FE-25 system. As of this date, SCI still is waiting on the remaining required materials to be delivered for the FE-25 System. In summary, SCI is seeking 21 additional days to this contract.

(R4, tab 9 at 2)

4. The contracting officer's representative responded to Serial Letter H-0066 by email on 4 September 2013, stating that the Corps was considering the time extension if Speegle would confirm that there was no other cost involved with the time extension (R4, tab 10). Speegle responded that same day stating there were costs involved, but that it was waiving its rights "for extended overhead or other costs for this associated time request" (R4, tab 11).

5. The parties' entered into negotiations on 4 September 2013, in response to Speegle's 19 August 2013 proposal (R4, tab 12). The Corps' PNM associated with the negotiation, under "DESCRIPTION OF CHANGE" states, "Request for adjustment for mod 00041H" and, "The purpose of this modification is to provide a complete equitable adjustment for any and all impacts, delays and costs associated with modification 00041H issued unilaterally on 7 December 2012" (*id.* ¶ 1). Under "NECESSITY FOR CHANGE" the PNM merely repeated the statement regarding purpose in paragraph 1 (*id.* ¶ 2). Paragraph 6, "TIME DISCUSSION," stated:

3

The Contractor sought an adjustment as a result of modification 00041H for the Fire Suppression System in serial letter H-0066, dated 19 August 2013, requesting 21 days additional contract time.

The Contractor's request for time adjustment in serial letter H-0066 and request for audit in serial letter H-0064 were not provided within the time limit prescribed in the Changes Clause; therefore, no time extension is warranted. However, there is mutual benefit in providing a 21-day time extension at no additional cost in order to reach a complete equitable adjustment for any and all impacts, delays, and costs associated with modification 00041H issued unilaterally on 7 December 2012. This time extension does not represent any additional cost but has the potential to reduce the extended field overhead costs associated with outstanding change order requests SCO17 for Feeders and SC020 for Additional Duct Bank.

(*Id.* ¶ 6) In conclusion the PNM summed up the negotiation by stating:

At the conclusion of negotiations, the contractor and government were in agreement on the time extension. The contractor stated that Speegle Construction, Inc. elected to waive its rights for extended overhead or other costs associated with this additional time.

The Government and the Contractor agreed that the final negotiated settlement as shown below was fair and reasonable, and that an equitable adjustment to the contract for all work associated with this change will be forthcoming, including all applicable costs for overhead and impact.

(*Id.* ¶ 8)

6. On 18 September 2013, the parties executed bilateral Modification No. 00041N (Mod. 00041N) (R4, tab 6 at 29). The modification (block 14) explicitly stated its purpose was to provide a time extension for adverse weather for December 2012 through July 2013, and for "Request for adjustment for mod 00041H" stating, "The purpose of this modification is to provide a complete equitable adjustment for any and all impacts, delays and costs associated with modification 00041H issued unilaterally on 7 December

4

2012." The modification extended the contract completion date by 32 days, but did not provide any further price adjustment. (*Id.* at 30) The modification also included the following release clause:

> In consideration of a modification agreed to herein as complete equitable adjustment for the Contractor's August 19, 2013 proposal(s) for adjustment, the Contractor hereby releases the Government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances giving rise to the proposal for adjustment.

(*Id.* at 30-31)

7. By email dated 23 September 2013, after Mod. 00041N was signed, Speegle requested the status of its request for a DCAA audit on behalf of L. Pugh (R4, tab 13 at 2). The Corps responded with Serial Letter C-0025, dated 11 December 2013, stating in part that "Serial letter H-0066 requested a 21-day time extension as a result of damages incurred from modification 1H.... [M]odification 1N was issued bilaterally providing a complete equitable adjustment for any and all impacts, delays and costs associated with modification [0004]1H." (R4, tab 14)

8. Speegle responded on 6 February 2014, stating that a DCAA audit of L. Pugh's overhead rate was warranted and that it never agreed to waiving its rights to any additional overhead due L. Pugh and that it would not have agreed to Mod. 00041N if specific verbiage regarding L. Pugh's extended office overhead had been included (R4, tab 15).

9. By Serial Letter H-0069, dated 19 May 2014, Speegle submitted a Request for Equitable Adjustment (REA), seeking $132,248.76 based upon a revised overhead rate for L. Pugh of 74.19% that included both field and office overhead (R4, tab 16). The Corps denied the REA on 21 January 2015 (R4, tab 17).

10. Speegle submitted a certified claim by letter dated 18 February 2015, asserting that the negotiation between the parties for Mod. 00041N did not address L. Pugh's overhead rate, and that the parties had engaged in numerous discussions regarding that overhead rate after the modification was issued thus indicating the issue was unresolved (R4, tab 3).

11. A contracting officer's final decision (COFD) was issued on 20 April 2015 denying Speegle's claim on the basis that Mod. 00041N was bilateral and contained a

full release of claims (R4, tab 2). Speegle timely appealed the COFD to the Board on 20 July 2015 (R4, tab 1).

## DECISION

We will grant summary judgment only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that may affect the outcome of the decision. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). All significant doubt over factual issues must be resolved in favor of the party opposing the summary judgment. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987).

The government argues appellant's execution of Mod. 00041N constituted both a release and an accord and satisfaction barring appellant's claim as a matter of law (gov't mot. at 5-8). Although separate affirmative defenses, a single agreement "may constitute both a release and an accord and satisfaction, either of which may bar future claims. *Holland v. United States*, 621 F.3d 1366, 1377 (Fed. Cir. 2010). We address each argument in turn.

*Release*

The government argues Mod. 00041N included an unqualified general release and there are no facts establishing one of the limited exceptions to the general rule that a general release, which is not qualified on its face, bars any claims based upon events occurring before execution of the release (gov't mot. at 5-8). Regarding the scope of the release, the government asserts:

> The language contained in Modification No. 00041N clearly encompassed the disputed overhead at issue in this appeal. The "Scope of Work" section of the modification specifically stated that its purpose was to "provide a complete equitable adjustment for any and all impacts, delays and costs associated with modification 00041H issued unilaterally on 7 December 2012." The release referenced Appellant's request for equitable adjustment and stated that Appellant was releasing Respondent "from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances giving rise to the proposal for adjustment." (SUF No. 8). No reservation of rights or exclusions were included in the release language.

6

When read as a whole, there is no question that Modification No. 00041N was intended to fully resolve the fire protection change order. The scope language cited above clearly stated that it was intended to resolve any outstanding issues relating to Modification No. 00041H. The actual release language covered "any and all liability" for the facts and circumstances that gave rise to the proposal, which was the fire protection change. Appellant was fully capable of reading and comprehending the three-page modification form to ensure that it accurately described the parties['] intent. Had Appellant not intended to release Respondent it could have excluded the subcontractor overhead specifically, using language similar to the closing statement in Modification No. 00041H. The fact that full release language was included, and garnered no objection by Appellant, indicates the Appellant was in agreement with a full release.

(*Id.* at 6)

In response, appellant argues that the intent of the parties, and thus the scope of the release in Mod. 00014N, did not include the overhead issue as evidenced by the language of the release and the parties' actions leading to execution of the modification (app. resp. at 5). Additionally, appellant argues the facts establish three exceptions to the release; mutual mistake, unilateral mistake, and continuing consideration of the claim after release (*id.* at 6-8).

A release is a contract whereby a party abandons a claim or relinquishes a right that could be asserted against another and must be interpreted in the same manner as any other contract term or provision. *Bell BCI Co. v. United States*, 570 F.3d 1337, 1341 (Fed. Cir. 2009). Consequently, our examination begins with the plain language of Mod. 00041N. The stated purposes of the modification under the description (block 14) was to grant a request for adjustment to Mod. 00041H and to provide an equitable adjustment for "any and all impacts, delays and costs associated with modification 00041H." Additionally, under subparagraph F, Closing Statement, there is release language stating:

In consideration of a modification agreed to herein as complete equitable adjustment for the Contractor's August 19, 2013 proposal(s) for adjustment, the

7

Contractor hereby releases the Government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances giving rise to the proposal for adjustment.

(SOF ¶ 5)

A reading of Mod. 00041N, as a whole, reveals the release language to be ambiguous as to the scope of the release. The scope of the release is specifically tied to the "August 19, 2013 proposal(s)" and "further equitable adjustments...giving rise to the proposal." Consequently, the scope of the release cannot be determined without examination of extrinsic evidence, i.e. the 19 August 2013 proposal. Additionally, the stated purpose of the modification is tied to the "request for adjustment to mod 00041H." The referenced "request" is not specifically identified but, based upon a reading of the document as a whole, presumably refers to the 19 August 2013 letter requesting a time extension of 21 days. Additionally, the scope of the release is further muddled by the use of "proposal(s)" to indicate their might be aspects of the proposal other than those in the 19 August 2013 letter.[3]

As moving party, the government has the burden of proving that there are no genuine issues of material fact and any doubt about factual issues is to be resolved in appellant's favor. *DTC Engineers & Constructors, LLC*, ASBCA No. 57614, 12-1 BCA ¶ 34,967 at 171,898. Our reading of the release language and other documents in the record indicates there is doubt whether the scope of the release encompassed the overhead issue. For instance, the first paragraph states, "Please note this modification was not mutually agreed/accepted by SCI. The amount of the modification remains in dispute with regard to the subcontractor's overhead rate." Additionally, the second paragraph indicates the scope of the proposal was to seek an additional 21 days resulting from the delay between execution of Mod. SC001/00041H and Mod. 000404/SC003. (SOF ¶ 3) Consequently, the proposal could indicate the scope of the proposal was limited to a request for a 21-day time extension for the government's delay between issuing Mod. 000404/SC003 and Mod. 00041H (*id.*). If that is the case, the scope of the release would not encompass the overhead issue.

The Board's task is not to resolve factual issues, but to determine whether disputes of material fact exist. *Advanced Business Concepts, Inc.*, ASBCA No. 55002, 06-1 BCA ¶ 33,271 at 164,893. Drawing all reasonable inferences and viewing the evidentiary record in a light favorable to the non-moving party, appellant, the scope of the release in

---

[3] There is a least one other 19 August 2013 "proposal" in the record, appellant's proposal that the government conduct a DCAA audit of the subcontractor's overhead rate (R4, tab 7).

Mod. 00041N is unclear and there is a genuine issue of material fact regarding the scope of the release.[4]

*Accord and Satisfaction*

The party asserting the affirmative defense of accord and satisfaction has the burden of proving all four elements of the defense: (1) proper subject matter; (2) competent parties; (3) a meeting of the minds; and (4) consideration. *Holland*, 621 F.3d at 1382; *Troy Eagle Group*, ASBCA No. 56447, 13 BCA ¶ 35,258 at 173,060. The government argues the agreement (Mod. 00041N) constitutes an accord and satisfaction and thus bars appellant's claim because:

> Even if Appellant had not signed the modification with full release language, the agreement to provide additional time in lieu of any additional costs constitutes accord and satisfaction. The only outstanding issue after the finalization of Modification No. 00041H was L. Pugh's field overhead rate. As stated in the PNM for Modification No. 00041N, no additional time extension was warranted, but Respondent agreed to the request for additional time in order to full and finally resolve all aspects of the fire protection change, to include L. Pugh's field overhead. The time extension was valuable consideration given the substantial liquidated damage rate and the relief from those damages that this extension may have provided Appellant.

(Gov't mot. at 8-9)

Appellant responds that clearly there was no meeting of the minds, and therefore, no accord and satisfaction. Appellant supports this argument by stating;

> The attached affidavit of Mr. Page establishes that no meeting of the minds occurred between the parties relating to the purported release of the overhead claim by the language in Modification No. 00041N. This fact is further supported by the 6 February 2014 letter from SCI to the Government unqualifiedly disputing the Government's assertion that the parties' discussions and

---

[4] Given our conclusion, we need not address appellant's asserted exceptions to the release (app. resp. at 6-8).

9

negotiations included release of the overhead claim.
[Citations omitted]

(App. resp. at 8)

Contrary to appellant's argument, appellant's mere subjective intent not to waive its claim is insufficient to raise a genuine issue of material fact to preclude summary judgment in defense of accord and satisfaction. *Ed. Zueblin, A.G. v. United States*, 44 Fed. Cl. 228, 233 (1999); *see also Mingus Constructors*, 812 F.2d at 1394 (a claim cannot be reserved and asserted on the basis of intent alone). Likewise, we are not persuaded by appellant's letter after executing the agreement asserting it did not waive its claim creates a genuine issue of material fact that would preclude summary judgment.

We are also not persuaded by the government's argument (gov't mot. at 8). Our reading of the 6 September 2013 PNM indicates the negotiation and execution of Mod. 00041N was the result of appellant's 19 August 2013 proposal/request (ex. G-1). As discussed above, that proposal arguably reserved the overhead issue and limited the scope of the proposal to the delay between execution of Mod. 000404/SC003 and Mod. 00041H (SOF ¶ 3). Drawing all reasonable inferences and viewing the evidentiary record in a light favorable to the non-moving party, appellant, the PNM could be read to reflect the parties' agreement to be limited to only addressing any time or cost impacts resulting from the delay between executing Mod. 000404/SC003 and Mod. 00041H; not the issue of overhead. Clearly, here there is dispute of a material fact on this issue of whether there was a meeting of the minds between the parties. Consequently, the government has failed in its burden of proof of establishing there is no genuine issue of material fact that Mod. 00041N constituted an accord and satisfaction barring appellant's claims as a matter of law.

## CONCLUSION

The government's motion for summary judgment is denied.

Dated: 10 May 2016

JOHN J. THRASHER
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

10

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60089, Appeal of Speegle Construction, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

11